LEONARDA C. DIAZ, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3552–76.    Filed September 27, 1978.

Leonarda C. Diaz, pro se.
*Richard S. Kestenbaum*, for the respondent.

WILBUR, *Judge:* Respondent determined deficiencies in petitioner's Federal income tax for the calendar years 1973 and 1974 in the amounts of $582 and $332.08, respectively. The sole issue for decision is whether the petitioner may deduct expenditures for tuition and books incurred during 1973 and 1974 as business expenses under section 162(a).[1]

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Petitioner, Leonarda C. Diaz, was a resident of South Ozone Park, Queens, N. Y., at the time the petition herein was filed. She timely filed individual Federal income tax returns for the calendar years 1973 and 1974.

Petitioner came to the United States from the Dominican Republic in 1962. During the years immediately prior to her arrival in this country, petitioner was a student in her native city of Santo Domingo, attending a business or secretarial school.

Beginning approximately in 1959, and for 2 or 3 years thereafter, petitioner conducted a day school for small groups of pre-school-aged children in her home in Santo Domingo. She supervised various activities of the children in their native language, Spanish. These activities included teaching the children the ABC's, singing songs, and telling stories, reading books to them, and playing games.

It was possible for petitioner to operate this school, the functional equivalent of a kindergarten, and to charge a modest amount for this service, because there were at this time no public schools in Santo Domingo for children under the age of 7. Petitioner never taught in a regular classroom in Santo Domingo, although there was at that time no formal teacher certification process there.

Petitioner obtained employment with the New York City Board of Education in 1968. She was a participant in that city's program for the utilization of auxiliary personnel—paraprofessionals—in the public school system. This program was designed to provide more effective education in the city through the

---

[1] Unless otherwise stated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.

decentralization of and increased community involvement in the public schools. These objectives were to be accomplished, in part, by the classroom use of neighborhood auxiliary personnel, especially those persons who spoke the same dialect or language as the non-English-speaking children. Petitioner worked in various capacities as a paraprofessional in one of the public schools in her neighborhood from 1968 to June 1974.

During the school years 1968–69 and 1969–70 petitioner was employed as an educational assistant, and was assigned to preschool and kindergarten classrooms in Public School 63, Manhattan. The duties of an educational assistant included assisting the teacher with large group activities, guiding the children to work and play harmoniously, reading stories to small groups of children, and assisting with the necessary clerical work. During the next 4 school years, and ending in June 1974, petitioner was employed in the same school as an educational associate. The duties of an educational associate included those of the educational assistant and other nonteaching duties, but included more responsibilities in reference to the instructional program. Under New York State law, teaching assistants including the positions of educational assistants and associates are authorized to act only under the general supervision of a licensed or certified teacher. See N.Y. Ed. Law, sec. 3009(2)(b) (McKinney 1970).[2]

A high school diploma, or high school equivalency diploma, was required in 1968 to qualify for employment as an educational assistant in the New York City public school system. By 1970, the requirement of 1 year's experience in the program for utilization of auxiliary personnel was added to the educational requirement. Petitioner qualified in 1968 for the position of an educational assistant on the basis of her high school equivalency

---

[2]This section provides:

1. No part of the school moneys apportioned to a district shall be applied to the payment of the salary of an unqualified teacher, nor shall his salary, or any part thereof, be collected by a district tax except as provided in this chapter.

2. a. Notwithstanding any other provision of law to the contrary, the school authorities of any school district shall have the power, in their discretion, to employ persons as teacher aides who shall assist the regular teacher or teachers of the district in the performance of their teaching functions by performing those nonteaching duties otherwise performed by such regular teacher or teachers.

b. Notwithstanding any other provision of law to the contrary, the school authorities of any school district shall have the power, in their discretion, to employ persons as teaching assistants. Such persons, if so employed, shall be authorized to act only under the general supervision of a licensed or certified teacher. [N.Y. Ed. Law, sec. 3009 (McKinney 1970).]

diploma, which she obtained in 1967, and her experience working with children in Santo Domingo.

As a paraprofessional employee in the New York City public schools, petitioner's advancement was largely dependent upon college courses completed at accredited institutions.[3] The board of education permitted its nonprofessional employees paid release time from work, up to 5 hours a week, to attend approved classes at various local colleges. In addition, the expenses for tuition and books incurred in attending such courses were paid by the board. These educational benefits were part of the board of education program for the utilization of auxiliary personnel, and the objective was to encourage its paraprofessional employees to upgrade and improve their skills, and in some instances to provide training ultimately leading toward teacher certification.

Petitioner participated in the education program for parapro-

---

[3] During the years at issue, the following were the job classifications for paraprofessional employees in the New York City public school system, together with their respective educational requirements:

| Title of position | Educational requirement |
| --- | --- |
| Educational assistant | High school diploma, or high school equivalency diploma, and 1 year of experience in the program. |
| Educational assistant "A—I" | 15 semester hours of approved college courses. |
| Educational assistant "A—II" | 30 semester hours of approved college courses. |
| Educational assistant "B" | 45 semester hours of approved college courses. |
| Educational associate | 60 semester hours of approved college courses and 2 years of experience as an educational assistant, or 90 semester hours of approved college courses and 1 year of experience in the program. |
| Auxiliary trainer | 60 semester hours of approved college courses and 3 years of experience as an educational assistant or educational associate, or both, or 90 semester hours of approved college courses and 2 years of experience in the program. |

Increased responsibility and compensation reflected an employee's progress in education and experience.

fessionals beginning in February of 1969 by attending Manhattan Community College. Such participation was not required of petitioner by the board of education in order for her to keep her job. She accumulated sufficient college credits and work experience such that she was promoted to the position of educational associate sometime in 1970. She continued her education at Manhattan Community College, earning her associate in arts degree in June 1972. About this time, petitioner matriculated at New York University, (NYU), beginning a program which ultimately led to a bachelor of science degree in education in June 1974. She was excused by NYU from its education degree requirement of practice or student teaching on the basis of her experience in the New York City schools as a paraprofessional. None of petitioner's expenses in attending NYU were paid by the board of education under its programs for paraprofessional education.

In New York City, the minimum eligibility requirements for obtaining a teacher's license (certification) are prescribed by its board of education.[4] During the years 1973 and 1974, the minimum educational requirements for various classes of teacher's licenses issued by New York City all included a baccalaureate degree, as well as specified numbers of credits in education courses.[5] In addition, applicants were required to pass an examination in their subject field before a license could be issued. Further educational requirements were imposed in order for a teacher to become tenured, with the failure to satisfy these tenure requirements within a designated period of time resulting in termination of the license.

Petitioner did not obtain her license to teach from the New York City Board of Education following her June 1974 graduation from NYU. This was because petitioner's scores on the national teacher examination were not considered high enough by the board to warrant her certification. Petitioner was, however, granted provisional certification in September 1974 upon her successful completion of a course dealing with drug

---

[4]These requirements may be different from the requirements imposed for certification of teachers to teach in public schools outside New York City. See N.Y. Ed. Law, secs. 3004, 3008, 2566(7), and 2569(1) (McKinney 1970). However, the State Commissioner of Education also requires a baccalaureate as a condition for certification. Cf. N.Y. Ed. Law, sec. 3001 (McKinney 1970).

[5]Those licenses of most interest to this petitioner were for teachers of early childhood classes (grades prekindergarten through grade 2), common branch subjects (grades 1–6), and for bilingual teachers of both those categories, all of which would be in day elementary schools.

and alcohol problems. Provisional certification in both New York City and New York State requires a baccalaureate degree. Petitioner obtained employment after receiving her degree as a teacher in a day care center, but was not able to find employment during 1974 as a teacher in the New York City public school system.

On her Federal income tax return for the calendar year 1973, petitioner claimed deductions for tuition, technical publications, and incidental expenditures and books as business expenses in the amounts of $3,269, $175, and $200, respectively. On her 1974 return, petitioner claimed deductions as education expenses for tuition and for books and supplies in the amounts of $1455 and $292, respectively. It is not disputed that the amounts expended and deducted for tuition were for undergraduate tuition expenses.

In his notice of deficiency, respondent disallowed for the year 1973 expenses claimed for tuition, technical publications, and incidental expenditures and books in the amounts of $3269, $56, and $100, respectively. Respondent disallowed the entire amounts claimed as educational expenses for 1974.[6] These deductions were disallowed on the ground that they were nondeductible personal expenses.

## OPINION

The issue in this case is whether petitioner is entitled to a business expense deduction for education expenses. These expenditures for tuition and books were incurred by petitioner in connection with college courses taken as part of a program of study leading to her bachelor's degree in education.

Section 162 allows a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Although this section does not explicitly mention expenditures for education, section 1.162–5[7]

---

[6]At trial, petitioner claimed that the amount actually paid for tuition in 1973 was $3,524, and that she is entitled to a deduction in that amount. Respondent has conceded only that the correct amount paid for tuition in 1973 was $3,524.

Petitioner produced receipts and canceled checks for expenses during 1973 totaling $234.73. Respondent conceded that such expenses for 1973, as well as $292 for 1974, were expended by petitioner for purposes of ordinary and necessary business expenses, and we so find.

[7]These regulations provide in relevant part:

Sec. 1.162–5. Expenses for education.

(a) *General rule.* Expenditures made by an individual for education * * * which are not

of the Income Tax Regulations provides objective tests for determining whether such expenditures are deductible (see *Taubman v. Commissioner,* 60 T.C. 814, 817 (1973); *Bodley v. Commissioner,* 56 T.C. 1357, 1360 (1971)), and has been upheld as valid. See *Weiszmann v. Commissioner,* 52 T.C. 1106, 1112 (1969), affd. per curiam 443 F.2d 29 (9th Cir. 1971).

These regulations lay down the general rule that educational expenses are deductible if the education maintains or improves

---

expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education—

(1) Maintains or improves skills required by the individual in his employment or other trade or business, or

(2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation.

(b) *Nondeductible educational expenditures—*(1) *In general.* Educational expenditures described in subparagraphs (2) and (3) of this paragraph are personal expenditures or constitute an inseparable aggregate of personal and capital expenditures and, therefore, are not deductible as ordinary and necessary business expenses even though the education may maintain or improve skills required by the individual in his employment or other trade or business or may meet the express requirements of the individual's employer or of applicable law or regulations.

(2) *Minimum educational requirements.* (i) The first category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is required of him in order to meet the minimum educational requirements for qualification in his employment of other trade or business. The minimum education necessary to qualify for a position or other trade or business must be determined from a consideration of such factors as the requirements of the employer, the applicable law and regulations, and the standards of the profession, trade, or business involved. The fact that an individual is already performing service in an employment status does not establish that he has met the minimum educational requirements for qualification in that employment. Once an individual has met the minimum educational requirements for qualification in his employment or other trade or business (as in effect when he enters the employment or trade or business), he shall be treated as continuing to meet those requirements even though they are changed.

(ii) The minimum educational requirements for qualification of a particular individual in a position in an educational institution is the minimum level of education (in terms of aggregate college hours or degree) which under the applicable laws or regulations, in effect at the time this individual is first employed in such position, is normally required of an individual initially being employed in such a position. * * *

\*      \*      \*      \*      \*      \*      \*

(3) *Qualification for new trade or business.* (i) The second category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is part of a program of study being pursued by him which will lead to qualifying him in a new trade or business. In the case of an employee, a change of duties does not constitute a new trade or business if the new duties involve the same general type of work as is involved in the individual's present employment. For this purpose, all teaching and related duties shall be considered to involve the same general type of work. The following are examples of changes in duties which do not constitute new trades or businesses:

(a) Elementary to secondary school classroom teacher.

(b) Classroom teacher in one subject (such as mathematics) to classroom teacher in another subject (such as science).

(c) Classroom teacher to guidance counselor.

(d) Classroom teacher to principal.

skills required by the individual in his or her employment or other trade or business or meets the express requirements of the employer. Sec. 1.162–5(a), Income Tax Regs. However, this general rule applies only if the expenditures do not fall within either of two specified categories. Thus, educational expenditures which are incurred to meet the minimum educational requirements for qualification in a taxpayer's trade or business or which qualify the taxpayer for a new trade or business are nondeductible personal expenditures. Sec. 1.162–5(b), Income Tax Regs. It is respondent's position that both of these nondeductible categories apply to the petitioner's education expenses, and we agree.

We consider first the question of whether the education which gave rise to the expenses in issue helped to qualify the petitioner for a new trade or business. If so, such costs are nondeductible personal expenses.

This Court has adopted a "commonsense approach" in determining whether an educational expenditure qualifies a taxpayer for a new trade or business. *Davis v. Commissioner*, 65 T.C. 1014, 1019 (1976); *Glenn v. Commissioner*, 62 T.C. 270, 275 (1974). If the education qualifies the taxpayer to perform significantly different tasks and activities than he or she could perform prior to the education, then the education qualifies him or her for a new trade or business. *Glenn v. Commissioner, supra; Weiszmann v. Commissioner, supra.*

Petitioner argues that her college education was not part of a program leading to her qualification in a new trade or business because the duties of her employment did not change significantly once she obtained her degree. Rather, petitioner claims that she was actively engaged in the trade or business of teaching both before and after her graduation from NYU. We cannot accept this argument.

Before completing the requirements for her degree in June 1974, petitioner was employed as a paraprofessional in the New York City public school system. The job description for those positions indicates that the function of the paraprofessional is, in general, to assist the regular classroom teacher or teachers in the performance of their duties. Such paraprofessionals are authorized to act only under the general supervision of a licensed or certified teacher. See N.Y. Ed. Law, sec. 3009(2)(b) (McKinney 1970).

We acknowledge that petitioner, employed as a paraprofessional, may have performed many of the tasks and activities often performed by teachers. However, this is not equivalent to saying that petitioner was a fully qualified teacher, within the meaning of the regulations, before obtaining her degree. Petitioner was not authorized to assume the complete control and responsibility for the classroom and the instructional activities within it. Moreover, she was not given the primary responsibility for the planning preparation of the instructional activities in the classroom. Accordingly, petitioner did not perform those duties we find essential to the teaching function when employed as a paraprofessional. Cf. *Grover v. Commissioner*, 68 T.C. 598, 602 (1977); *Weiszmann v. Commissioner*, 52 T.C. 1106 (1969), affd. per curiam 443 F.2d 29 (9th Cir. 1971).

This is not a case invoking the language in the regulations that all teaching and related duties shall be considered to involve the same general type of work. Sec. 1.162–5(b)(3)(i), Income Tax Regs. Each example used to illustrate this regulation involves a classroom teacher whose duties are not significantly changed when additional responsibilities are assumed. However, the petitioner was not a certified or licensed classroom teacher to begin with, and is thus not explicitly included by the examples. Moreover, we do not believe these examples suggest that a shift from paraprofessional to classroom teacher, with the significant changes in responsibility and control that accompany such a shift, is within the same category as those changes in duties that do involve the same general type of work.

Alternatively, petitioner contends that she was not engaged in a new trade or business after receiving her degree because she was still engaged in the trade or business of being a paraprofessional. This continuing status as a paraprofessional was attributable to petitioner's failure to pass the teacher's examination required by the board of education for certification.

This contention must also be rejected. For educational expenditures to be nondeductible, according to the regulation, it is sufficient that the expenditures be made for education which is part of a program of study which will *lead to* qualifying the taxpayer in a new trade or business. Sec. 1.162–5(b)(3)(i), Income Tax Regs. The petitioner's undergraduate education resulted in a degree in education, and this course of study ultimately would lead to her qualification for a new trade or business as a teacher.

It is not necessary that petitioner actually meet all the requirements for qualification as a teacher if the education pursued leads to such qualification in the new trade or business. See *Weiszmann v. Commissioner, supra* at 1111.

Accordingly, petitioner's expenditures were for education which led to her qualification in a new trade or business and are nondeductible personal expenses under section 262. However, even assuming that the education did not lead to her qualification in a new trade or business, the expenditures in question are nondeductible because they were incurred in order for petitioner to meet the minimum education requirements for qualification as a teacher. Sec. 1.162–5(b)(2)(i), Income Tax Regs.

The fact that petitioner may have been performing services as a teacher prior to June 1974 does not establish that she had satisfied the minimum requirements for qualification as a teacher. Sec. 1.162–5(b)(2)(i), Income Tax Regs. The minimum educational requirement for qualification of an individual in a position in an educational institution is the minimum level of education, in terms of aggregate college hours or degree, which is normally required of an individual initially being employed in such a position. Sec. 1.162–5(b)(2)(ii), Income Tax Regs. In New York City, its board of education prescribed as the minimum educational requirement for obtaining a license as an elementary school teacher the completion of a bachelors degree, with a specified number of credit hours in professional educational courses. Petitioner had simply not satisfied this minimum requirement at the time these expenditures were incurred because she had not yet earned her bachelor's degree. The education expenditures were made to enable petitioner to meet the minimum requirements for becoming a teacher, and were therefore not deductible. See *Jungreis v. Commissioner*, 55 T.C. 581, 589–591 (1970); *Garwood v. Commissioner*, 62 T.C. 699, 703 (1974).

Petitioner argues that a person cannot obtain a license or certificate to teach in New York City without successfully completing a teacher's examination, even if that person has a bachelor's degree. Therefore, she reasons that the degree is not the minimum requirement for qualification as a teacher, and her educational expenses to obtain that degree are deductible because they were not incurred to meet the minimum requirement for qualification as a teacher.

We find this argument unconvincing. Petitioner is misapplying the concept of minimum educational requirements by confusing it with the notion of the *last* requirement for qualification in a trade or business. The bachelors degree is one of a number of requirements that must be met before petitioner can be licensed as a teacher, all of which are minimum requirements. Moreover, the regulations implicitly recognize this distinction by stating that law school expenses are nondeductible because they constitute education required to meet the minimum educational requirements for qualification as a lawyer; even though qualification is dependent upon successful completion of the jurisdiction's bar examination and not the education alone. Sec. 1.162–5(b)(2)(iii), example (*3*), Income Tax Regs.

Petitioner advances several other arguments that her education expenditures are deductible. We have considered these arguments carefully and do not find them persuasive. They are based for the most part upon cases interpreting regulations which are not applicable to the taxable years at issue,[8] or are otherwise distinguishable on the basis of the factual findings made herein. Accordingly, respondent's disallowance of the claimed deductions is approved.

*Decision will be entered under Rule 155.*

---

[8] Sec. 1.162–5, Income Tax Regs., was amended by T.D. 6918, 1967–1 C.B. 36, effective for taxable years beginning after Dec. 31, 1967. See the discussion contained in *Jungreis v. Commissioner*, 55 T.C. 581, 586–588 (1970); *Hering v. Commissioner*, T.C. Memo. 1974–286.

