MARVIN V. DAMM AND NINA M. DAMM. Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Damm v. Commissioner
Docket No. 12125-78.
United States Tax Court
T.C. Memo 1981-203; 1981 Tax Ct. Memo LEXIS 537; 41 T.C.M. (CCH) 1359; T.C.M. (RIA) 81203; April 27, 1981. *537 Petitioner-husband taught as a lecturer in a university for two years. Then, for two years he studied full time for a Ph.D. agree. Then, he returned to teach as a lecturer in the same university. Held: Since (1) the education maintained or improved petitioner-husband's skills as a teacher, (2) the education was not necessary to meet the minimum educational requirements for teachers, and (3) the education did not qualify him for a new trade or business, the educational expenses are deductible when made. Sec. 162(a), I.R.C. 1954; sec. 1.162-5, Income Tax Regs.
Marvin V. *538 Damm, pro se. Albert B. Kerkhove, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined deficiencies in Federal individual income tax against petitioners for 1974 and 1975 in the amounts of $ 465.63 and $ 9.65, respectively. Petitioners have claimed an overpayment of $ 229.78 for 1975. [1] The issue for decision is whether petitioners may deduct under section 162[2] educational expenses made [3] by petitioner Marvin V. Damm. *539 FINDINGS OF FACT Some of the facts have been stipulated; the stipulations and stipulated exhibits are incorporated herein by this reference. When the petition in this case was filed, petitioners Marvin V. Damm (hereinafter sometimes referred to as "Damm") and Nina M. Damm, husband and wife, resided in Lincoln, Nebraska. In 1962, Damm received a Bachelor of Science degree (with course emphasis in civil engineering) from Fresno State College (which was renamed California State University, Fresno, on June 1, 1972, and is hereinafter referred to as "Fresno"). From 1964 through 1969, he was employed as a civil engineer by the California Department of Water Resources. During this time, he took several courses in applied hydraulics and hydrology at Fresno. Damm became a California registered civil engineer on December 10, 1965. In 1969, he left his employment with the California Department of Water Resources to obtain a Master of Science degree. Damm received a Master of Science in Engineering degree from the University of California, Berkeley (hereinafter referred to as "Berkeley"), in 1970. His work was in civil engineering, with a major in water resources and minors in *540 soil mechanics and statistics. He then began working on a doctor of philosophy degree (Ph.D.) in 1970. From January to March of 1971, he taught an upper division course in hydrology part time at Berkeley. By a letter dated May 26, 1971, Damm indicated an interest in a teaching position in civil engineering at Fresno. On July 23, 1971, Damm was offered employment by Fresno as a "Lecturer C" in engineering. In the letter offering Damm the position, Fresno's Academic Vice President stated, "I am happy to invite you to join our faculty." Damm accepted the offer and was employed in the Lecturer C position (at the fourth salary step of that position) during the 1971-1972 academic year. The Lecturer C salary schedule was the same as that of the tenure track position of assistant professor in Class I--i.e., with education and experience deemed equivalent to a college degree, but not a doctorate degree. In 1972, Damm was again offered employment as a Lecturer C at Fresno. He was employed at the fifth salary step of that position during the 1972-1973 academic year. Damm was a full-time lecturer in the 1971-1972 and 1972-1973 academic years, during which he taught in the general area *541 of civil engineering. During the academic years 1973-1974 and 1974-1975, Damm was enrolled at Berkeley, working on a Ph.D. degree in civil engineering. He was awarded this degree on June 14, 1975. From November 18 to November 30, 1974, and from January 1 to January 31, 1975, Damm was a research assistant for Berkeley as required by its Ph.D. program, for which he was paid $ 76.20 and $ 688.78, respectively. Petitioners excluded both of these amounts under the provisions of section 117. Respondent has raised no objection to these exclusions. Indeed, respondent's acceptance of the 1975 exclusion, by way of amended return, has given rise to the overpayment possibility referred to in note 1, supra. In 1975, Damm presented a seminar at the California State University, Fullerton, for which he was paid $ 50.40. On July 22, 1975, Damm was offered employment as a Lecturer C in civil engineering with Fresno; he was employed at the third salary step of that position full time during the first semester of the 1975-1976 academic year and part time for the second semester of that year. This Lecturer C salary schedule was the same as that of the tenure track position of associate *542 professor. [4]
Damm was appointed Associate Professor of Civil Engineering at the University of Nebraska-Lincoln on July 1, 1976, and continued at that school until the time of the trial in the instant case. Damm's educational course of study from 1973 through 1975 for his Ph.D. degree was in the same field of study as the primary subjects he taught as a lecturer at Fresno during 1971 through 1973, as well as 1975 through 1976. As a lecturer, he taught courses in water resources, assisted in teaching courses in statics and surveying, and developed a course in hydrology and water supply for non-civil engineering majors. The definition of the lecturer position is provided in 5 Cal. Adm. Code sec. 42700(x) (1967) as follows: "Lecturer" is a title used to cover a non-permanent academic assignment normally of a visiting or part-time nature where the salary level of the individual is in accordance with his qualifications.
*543 The Fresno Faculty Handbook--September 1975 (hereinafter sometimes referred to as "the 1975 Hanbook") states as follows: In accordance with the recommendation of the Academic Senate of the California State University and Colleges, approved October 17, 1969, the appointment of a lecturer on a full-time basis shall be limited to a maximum of two complete consecutive academic years. In order to receive the second academic year of employment as a lecturer, the person must be renominated. Appointment for the first year does not automatically entitle a person to a second-year appointment. This provision in the 1975 Handbook was approved by Fresno in February of 1974. The 1975 offer of employment to Damm states that "[i]n no event can a lecturer status extend beyond a period of two years." No such statement appears in the 1971 Fresno offer of employment. The 1966 version [5] of Cal. Adm. Code sec. 42711 provides as follows: 42711. Faculty. The faculty of each state college shall consist of specialists qualified to give the instruction *544 in each authorized curriculum. The doctorate or equivalent attainment shall be the desirable qualification for appointment to a college faculty position. Equivalent attainments may be accepted: (a) In those fields where the doctorate is not common, and (b) In vocational fields where experience may be substituted for academic training. The Fresno Faculty Handbook--September 1973 (hereinafter sometimes referred to as "the 1973 Handbook") and the 1975 Handbook generally require the baccalaureate degree as the minimum academic qualification for employment as a faculty member. [6] *545 The Fresno Faculty Handbook--August 1971 (hereinafter sometimes referred to as "the 1971 Handbook") provides that, as to academic personnel beginning their full-time service on or after September 1, 1971, only tenured faculty could be promoted to associate professor or professor. The 1971 Handbook also incorporates certain changes to the California Administrative Code regarding the policy on tenure, noting an amendment regarding the awarding of credit toward tenure for full-time consecutive service as lecturer. Before this amendment, up to two years of full-time lecturer service might count toward tenure. This amendment modified the rule as to lecturers who began to serve on or after September 1, 1971. If any such lecturer is appointed to professor, then not more than one year of lecturer service might count toward tenure. The amendment made no change as to (1) *546 lecturers who began to serve before September 1, 1971, and (2) lecturers appointed to any tenure track position other than professor. The 1973 Handbook and the 1975 Handbook also provide as follows: B. REAPPOINTMENT AND TENURE
1. Criteria
1.3 Tenure normally should be granted only to a faculty member who holds the usual terminal degree in his field of specialization, as indicated in the initial employment letter, from an accredited United States institution or from a recognized foreign university. Exceptions to this rule should be made only where a candidate demonstrates unusual strength in teaching effectiveness or contributions to a field of learning. This requirement as to tenure was approved in December of 1972; it went into effect at some point in, or immediately after the end of, the 1972-1973 academic year. The Fresno salary schedules effective as of July 1, 1969, and July 1, 1972, reflect salary classes within the tenure track positions at each rank for those with education and experience equivalent to a college degree (Class I) and those with a doctorate degree (Class II). The Fresno General Catalog for the 1972-1973 academic year (hereinafter referred *547 to as "the Catalog") indicates that the 1971-1972 academic year faculty included five individuals who had held that position of lecturer for time periods ranging from 2-1/2 to 21-1/2 years. It also indicates that, in Fresno's Engineering Division, doctorate degrees were held by only seven of the seventeen full-time professors and associate professors. The Catalog lists Damm under the heading "FACULTY AND ADMINISTRATION, 1971-1972" and the subheading "FULL-TIME STAFF". When Damm accepted Fresno's offer of a full-time lecturer position for the 1971-1972 academic year, he met the minimum academic requirement for that position. While working for Fresno and Berkeley, Damm did not have tenure, nor did he hold a tenure track position; however, up to two years of Damm's full-time Fresno lecturer service could count toward tenure at Fresno. Damm made (see note 3, supra) $ 2,116.53 and $ 1,088.31 of educational expenses in 1974 and 1975, respectively, relating to his Ph.D. degree, which petitioners deducted on their income tax returns for these years. OPINION Petitioners maintain that Damm's educational expenses in earning the Ph.D. degree are deductible as ordinary and necessary *548 trade or business expenses because the education for which they were made was (1) to maintain or improve Damm's skills in his employment, or in the alternative (2) to keep his status at Fresno, or in the alternative (3) to meet the express requirements of Damm's employer. [8] Respondent asserts that the educational expenses are not deductible because the education for which they were made enabled Damm to meet the minimum educational requirements for qualification in Damm's employment in a permanent" teaching position. Petitioners respond that, when Damm began his employment, the Ph.D. degree was not required in order to obtain a permanent position. They maintain that the requirements for a permanent position subsequently were changed and Damm's expenses were made to meet the new requirements. On reply brief, respondent asserts that the education qualified Damm for a new trade or business--that of being a tenured faculty member. We agree with petitioners' conclusion that the expenses in question are deductible in full in the years they were made. [9]
*549 Section 162(a)[10] provides for the deduction of all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. As section 162(a) has been interpreted, educational expenses may constitute deductible trade or business expenses if the education for which the expenses are made (1) maintains or improves skills required in the taxpayer's employment or other trade or business, or (2) meets the express requirements of the taxpayer's empoyer (or of applicable law or regulations) imposed as a condition for the taxpayer to retain an established employment relationship. See, e.g., section 1.162-5(a), Income Tax Regs.[11]
*550 Even though education falls within one or both of the above categories, the expenses therefor are nevertheless nondeductible if the education either enables the taxpayer to meet the minimum educational requirements for qualification in his or her employment or other trade or business, or qualifies the taxpayer for a new trade or business. Garwood v. Commissioner, 62 T.C. 699 (1974); section 1.162-5(b), Income Tax Regs.[12]
*551 The parties' basic dispute, as we see it, is as to what Damm's trade or business was when he was a lecturer at Fresno. Damm was a full-time classroom teacher. He was paid at the same rate as assistant professors and associate professors. He was not essentially an apprentice, nor was his job conditioned on his enrollment as a student. [13] Compare Ford v. Commissioner, 56 T.C. 1300, 1305 (1971), affd. 487 F.2d 1025 (CA9, 1973), with Jungreis v. Commissioner, 55 T.C. 581 (1970). For the 1973-1974 and 1974-1975 academic years, Damm stopped teaching (except as indicated in note 13, supra) and devoted his full time to completing the course of study for the Ph.D. degree in the same field that he had been teaching in for the two immediately preceding academic years. After receiving the Ph.D. degree, Damm promptly returned to teaching in the same field. From the foregoing, we conclude that Damm's expenses *552 in the 1973-1974 and 1974-1975 academic years were made to maintain or improve his skills as a civil engineering teacher at the university level, and that that was an existing trade or business of Damm's during these two academic years. Furner v. Commissioner, 393 F.2d 292 (CA7 1968), revg. 47 T.C. 165 (1966); Ford v. Commissioner, supra; section 1.162-5(a)(1), Income Tax Regs. See Haft v. Commissioner, 40 T.C. 2, 6 (1963).
Despite this conclusion, the expenses are nevertheless nondeductible if they are for education which either (1) was required for Damm in order to meet the minimum educational requirements of his trade or business or (2) was part of a program which would lead to qualifying Damm in a new trade or business. We inquire first as to whether the education, the expenses of which petitioners seek to deduct, was required of Damm in order to meet the minimum requirements of his trade or business. Notwithstanding the California Administrative Code's statement that "[t]he doctorate or equivalent attainment shall be the desirable qualification for appointment to a college faculty position" (5 Cal. Adm. *553 Code sec. 42711), the 1973 Handbook and the 1975 Handbook specifically state that "[t]he minimum academic qualification for employment of faculty members is the baccalaureate degree." (See note 6, supra.) Indeed, the handbooks then provide for circumstances under which even the baccalaureate degree is not required for appointment to the Freno faculty. This is not to suggest that in considering whether to allow deduction of educational expenses we are in any way bound by the designation by an educational institution of a taxpayer as a member of the faculty. The facts and circumstances of the particular position within such institution will be considered, not simply the characterization of the position by the institution. Here we have far more than merely the educational institution's label. In the 1972-1973 academic year, most of Damm's professor and associate professor colleagues in the Engineering Division at Fresno, to which Damm was assigned, did not have doctorate degrees. Service as a lecturer could count toward tenure at Fresno. Although in 1972 certain restrictions were placed on the amount of such service that could be counted toward appointment as a professor, *554 such restrictions did not apply in the case of appointments to lower tenure track positions. Also, Damm was paid at the same rate as regular faculty members (assistant professors from 1971 through 1973 and associate professors in 1975), and Damm's role in teaching and creating courses appears to have been essentially the same as that of his tenure track colleagues. In testing the record in the instant case against the standards in subdivision (ii) of section 1.162-5(b)(2), Income Tax Regs.(note 12, supra), we conclude that Fresno did not normally require a doctorate degree as a minimum level of education for lecturers or for faculty members in general. We conclude that Damm, who had already been awarded the baccalaureate degree and the master's degree, met the minimum educational requirements for lecturers and for faculty members in general at Fresno. [14]
*555 From the foregoing, we conclude that Damm's educational expenses are not rendered nondeductible by the minimum educational expenses test. We next inquire as to whether the education, the expenses of which petitioners seek to deduct, was part of a program which would lead to qualifying Damm in a new trade or business. This Court has adopted a "commonsense approach" in determining whether an educational expenditure qualifies a taxpayer for a new trade or business. Diaz v. Commissioner, 70 T.C. 1067, 1074-1075 (1978), affd. without opinion 607 F.2d 995 (CA2 1979). Damm was a classroom teacher teaching civil engineering courses, both before he attained the Ph.D. degree and after he attained the degree. The record in the instant case does not suggest any manner in which Damm's duties before he attained the Ph.D. degree differed from those of his colleagues who were associate professors or professors. Damm taught courses, assisted in teaching courses, and developed at least one course. damm was neither an apprentice ( Jungreis v. Commissioner, supra) nor a paraprofessional ( Diaz v. Commissioner, supra) *556 during the 1971-1972 and 1972-1973 academic years. The Ph.D. degree would assist Damm in attaining tenure or a professorship, but would not change his trade or business. Ford v. Commissioner, supra at 1305; sec. 1.162-5(b)(3)(i), Income Tax Regs. We conclude that Damm's educational expenses are not rendered nondeductible by the new trade or business test. On the basis of the foregoing, we conclude that petitioners are entitled to deduct Damm's educational expenses here in dispute. Respondent contends that in applying the regulations to this case we should be guided by our opinion in Jungreis v. Commissioner, supra. Jungreis was a teaching assistant, he taught part time, his salary was less than that of regular faculty members, his work was different from that of regular faculty members, his service did not count toward tenure, and from the outset he could not hold his job for any period unless for that period he was enrolled as a student and making satisfactory progress toward a graduate degree. We concluded that Jungreis was essentially an apprentice, rather than a teacher. Damm, by contrast, was a full-time teacher doing what regular *557 faculty members did in the classroom, he was paid the same as regular faculty members, up to two years of his service could count toward tenure, and his job did not depend on a condition precedent. Jungreis is clearly distinguishable. Respondent's other arguments ultimately rely on Jungreis as foundation for the proposition that, as a lecturer, Damm was not a teacher.As indicated above, we believe that Jungreis is properly distinguishable and that, on the record in the instant case, Damm was a teacher; he was not merely an apprentice.
We hold for petitioners. To take account of petitioners' claim for overpayment (see note 1, supra), Decision will be entered under Rule 155. Footnotes
1. Respondent has conceded the items which would result in an overpayment of an amount to be determined under Rule 155, Tax Court Rules of Practice and Procedure↩, if we hold for petitioners on the educational expenses issue. 2. Unless otherwise indicated, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the taxable years in issue. ↩
3. In the pleadings and briefs, the parties appear to use interchangeably the words "expended", "incurred", and "made". Since the relevant amounts are not in dispute and the record is far from enlightening as to which term is appropriate in the instant case, we use the term "made," without intending to decide which term is appropriate.↩
4. The salary schedule in effect as of July 1, 1975, was structured differently from that in effect when Damm taught in the 1971-1972 and 1972-1973 academic years; in the earlier years, Lecturer C status was equivalent to only a lower-ranking assistant professorship.↩
5. The 1972 version of that section substituted the term "campus" for the terms "state college" and "college" in the above-quoted version.↩
6. A. APPOINTMENT
8. Appointment of Academic Personnel Without a Baccalaureate Degree
8.1 Minimum academic qualifications. The minimum academic qualification for employment of faculty members is the baccalaureate degree. Appointment of persons not holding the baccalaureate degree to full-time or part-time faculty positions shall not be made except in the following circumstances: 8.1.1 For positions involving courses in the regular curriculum, other than new or developing programs: 1) Persons whose experience or training is recognized by professional or occupational standards as affording expertise directly related to specific instructional areas may be appointed if it can be shown that such persons have the best qualifications among available candidates, and that the instructional areas are important to the university. 2) Undergraduate students shall not be appointed as instructors with primary responsibility for a course or section of a course. They may, however, be appointed as assistants for courses involving laboratory work or activities (to supervise laboratory work or other activities) if failure to offer the laboratory or activity will result in serious deprivation to enrolled students, Appointments of undergraduates in cases other than the Experimental College are clearly exceptional and unusual, and must be based on a showing of genuine need for such appointment in connection with regular courses. Mere student, faculty, or administrative convenience is not sufficient. * and only on the following conditions: a) Persons holding the baccalaureate or higher degree are not available or lack the current competence. b) The undergraduate proposed for appointment has demonstrated adequate competence. c) Adequate supervision by full-time faculty is assured. 8.1.2 For positions not involving regular curriculum offerings and for new or developing programs: 1) Persons who do not hold the baccalaureate degree, whether undergraduate or not, may be appointed for courses offered in the Experimental College. 2) New or developing programs are those instructional programs which involve new subject matter and/or are in the process of developing into new academic disciplines, but which are outside existing academic disciplines. Persons who do not hold the baccalaureate degree, whether undergraduate or not, *
See *, supra.
[7] may be appointed to nonpermanent positions in these programs upon a showing that they have special competence for such a program and their appointment is not justified under 8.1.1(1), above. 8.2 Procedures for appointment of persons not holding baccalaureate degrees↩. The normal appointment procedures shall be followed, including appropriate faculty consultation, but nomination for appointment shall be made only after prior consultation with the Vice President for Academic Affairs or his designee. The nomination papers shall contain a special notation of the fact that an appointment of a nonbaccalaureate holder is involved, and a statement of the conditions justifying the appointment.
8. In view of our disposition of petitioners' first argument, we do not consider their alternative arguments.↩
9. Damm's education clearly may be expected to be useful in his career as teacher for many years after the expenses were made. Nevertheless, neither side disputes the now-or-never status of the educational expenses deduction. Compare Ford v. Commissioner, 56 T.C. 1300 (1971), affd. per curiam 487 F.2d 1025 (CA9 1973), with Jungreis v. Commissioner, 55 T.C. 581 (1970). This status heightens the stakes in litigation and necessitates the drawing of lines that often are perceived as neither just nor administrable. See, e.g., Tarshes, The Cost of Education as a Deductible Business Expense: A Reassessment, 1980 Duke L.J. 997↩.
10. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * * ↩
11. Sec. 1.162-5. Expenses for education. (a) General rule. Expenditures made by an individual for education (including research undertaken as part of his educational program) which are not expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education-- (1) Maintains or improves skills required by the individual in his employment or other trade or business, or (2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relatioship, status, or rate of compensation.↩
12. Section 1.162-5(b), Income Tax Regs., provides in relevant part as follows: (b) Nondeductible educational expenditures--(1) In general. Educational expenditures described in subparagraphs (2) and (3) of this paragraph are personal expenditures or constitute an inseparable aggregate of personal and capital expenditures and, therefore, are not deductible as oridinary and necessary business expenses even though the education may maintain or improve skills required by the individual in his employment or other trade or business or may meet the express requirements of the individual's employer or of applicable law or regulations. (2) Minimum educational requirements.(i) The first category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is required of him in order to meet the minimum educational requirements for qulaification in his empoyment or other trade or business. The minimum education necessary to qualify for a position or other trade or business must be determined from a consideration of such factors as the requirements of the employer, the applicable law and regulations, and the standards of the profession, trade, or business involved. The fact that an individual is already performing service in an employment status does not establish that he has met the minimum educational requirements for qualification in that employment. Once an individual has met the minimum educational requirements for qualification in his employment or other trade or business (as in effect when he enters the employment or trade or business), he shall be treated as continuing to meet those requirements even though they are changed. (ii) The minimum educational requirements for qualification of a particular individual in a position in an educational institution is the minimum level of education (in terms of aggregate collete hours or degree) which under the applicable laws or regulations, in effect at the time this individual is first employed in such position, is normally required of an individual initially being employed in such a position. If there are no normal requirements as to the minimum level of education required for a poition in an educational institution, then an individual in such a position shall be considered to have met the minimum educational requirements for qualification in that position when he becomes a member of the faculty of the educational institution. The determination of whether an individual is a member of the faculty of an educational institution must be made on the basis of the particular practices of the institution. However, an individual will ordinarily be considered to be a member of the faculty of an institution if (a) he has tenure or his years of service are being counted toward obtaining tenure; (b) the institution is making contributions to a retirement plan (other than Social Security or a similar program) in respect of his employment; or (c) he has a vote in faculty affairs. (3) Qualification for new trade or business. (i) The second category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is part of a program of study being pursued by him which will lead to qualifying him in a new trade or business. In the case of an employee, a change of duties does not constitute a new trade or business if the new duties involve the same general type of work as is involved in the individual's present employment.For this purpose, all teaching and related duties shall be considered to involve the same general type of work. The following are examples of changes in duties which do not constitute new trades or businesses: (a) Elimentary to secondary school classroom teacher. (b) Classroom teacher in one subject (such as mathematics) to classroom teacher in another subject (such as science). (c) Classroom teacher to guidance counselor. (d) Classroom teacher to principal.↩
13. We test petitioners' deductions by Damm's full-time Fresno teaching for 2-1/2 academic years and give no weight, for these purposes, to his miscellaneous research assistant and seminar employments in 1974 and 1975.↩
14. In his opening brief, respondent states that "[t]heCalifornia Administrative Code effective in 1972 required that petitioner have a doctorate to be appointed to the faculty." Respondent does not provide us with a precise reference to the particular code section upon which this statement is based. We assume this statement is based upon 5 Cal. Adm. Code sec. 42711, supra. However, that section provides only that a doctorate or equivalent attainment isdesirable for appointment to a faculty position. Moreover, the baccalaureate degree was the only educational requirement for appointment to the faculty at Fresno (see note 6, supra). The record does contain several exhibits indicating that a terminal degree in the field of specialization of a Fresno faculty member is a prerequisite for the granting of tenure or promotion. Such a provision appears in the 1973 Handbook and the 1975 Handbook, as well as material sent to Damm in connection with Fresno's 1975 offer of employment as lecturer, but does not appear in the 1971 Handbook or elsewhere in the record as in effect when Damm began his service as a teacher at Fresno.↩