T.C. Summary Opinion 2004-107

UNITED STATES TAX COURT

WILL M. McEUEN III AND TRACY L. McEUEN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8668-02S.          Filed August 3, 2004.

Will M. McEuen III and Tracy L. McEuen, pro sese.

<u>Timothy A. Lohrstorfer</u>, for respondent.


DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  Unless otherwise
indicated, subsequent section references are to the Internal
Revenue Code in effect for the year at issue.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.

Respondent determined a deficiency in petitioners' 1998 Federal income tax of $2,558. The parties agree that respondent correctly determined that petitioners have unreported income of $7 from the refund of State income tax for the prior year.

The issue remaining for decision is whether petitioners are entitled to deduct on Schedule A, Itemized Deductions, educational expenses of $20,317. Respondent did not challenge petitioners' entitlement to additional itemized deductions of $3,794. Because the amount of unchallenged itemized deductions is less than the standard deduction, respondent allowed the standard deduction in the deficiency determination.

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits received in evidence are incorporated herein by reference. At the time the petition was filed, petitioners resided in York, South Carolina.

## Background

Tracy L. McEuen (petitioner) earned a B.A. degree, with distinction, in mathematics and economics, from Indiana University in 1992 and began working at Merrill Lynch (M-L) the same year. Petitioner was employed as a "financial analyst" at M-L. Financial analysts could remain at M-L for a maximum of 3 years, as did petitioner. To become an "associate" at M-L, a candidate was required to have an M.B.A. degree. Petitioner left M-L in 1995.

Petitioner went to work for Raymond James Financial, Inc. (James), in June of 1995. Petitioner was hired as a financial analyst with the corporate finance department of James. At the time of her employment, the department described itself as consisting of "23 investment bankers and eight financial analysts". The financial analyst program at James was a 2- to 3-year program. In order to be an "associate" at James, an M.B.A. degree was required.

In the investment banking industry during the years 1995 and 1996, an M.B.A. degree was required to obtain a position as an associate with an investment banking firm.

Analysts at James are evaluated according to fairly subjective criteria such as: (a) Mastery of analytics; (b) attention to detail; (c) teamwork and positive attitude; and (d) communication and leadership skills.

Associates at James are evaluated according to performance criteria grouped under five categories: (1) "General Performance Expectations"; (2) "Recruiting and Team Building"; (3) "Management and Supervision of Banking Analysts"; (4) "Execution of Business"; and (5) "Business Generation". Under the heading "Management and Supervision of Banking Analysts", James performance criteria state that associates are responsible for supervising and training analysts. The criteria include a

statement that "The Associate is responsible for the quality of the work produced by Analysts under their supervision."

Financial analysts and associates were not, however, always assigned to all of the same securities transactions. Sometimes the work of the team was distributed so that an analyst would work only with a vice president or managing director on a transaction without the involvement of an associate. At James, both analysts and associates received health insurance benefits and section 401(k) benefits.

While petitioner was working at James, she was accepted at the Kellogg School of Management at Northwestern University (Kellogg). Petitioner concluded that it was impractical for her to pursue an M.B.A. while she was employed because of the long hours an analyst is required to work. Petitioner resigned her position at James in June of 1996 to attend Kellogg.

While at Kellogg, petitioner, an exceptional student, majored in marketing, "organizational behavior", and finance. She received her master of management degree in June of 1998. During the period of 1996 through 1998, the master of management degree at Kellogg was the equivalent of the master of business administration degree at other institutions.

After her graduation from Kellogg, petitioner did not return to an investment banking firm as an analyst or associate. Petitioner was hired by Spring Industries in September of 1998.

Spring Industries is a manufacturer of home furnishings.
Petitioner was hired into the "General Management Program"
(program). Candidates for the Spring Industries program were
required to have an M.B.A. or equivalent. As described by Spring
Industries, the program "is a proving ground for future top
executives" and "prepares associates for careers in marketing,
finance or operations management." When petitioner completed the
program with Spring Industries, she became an "associate brand
manager".

On their joint Form 1040, U.S. Individual Income Tax Return,
for 1998, petitioners deducted on Schedule A $20,317 for
"REQUIRED EDUCATION" (having reduced $21,125 by $808, 2 percent
of reported adjusted gross income).

## Discussion

The Court decides this case on the preponderance of the
evidence, regardless of the allocation of the burden of proof.
Section 7491[1] is therefore inoperative.

Petitioner argues that she was employed as an "investment
banker" with the M-L and James companies, having the job title
"financial analyst". She did not abandon her trade or business
as an "investment banker" by attending Kellogg for 2 years, she

---

[1]Sec. 7491 is effective with respect to court proceedings
arising in connection with examinations by the Commissioner
commencing after July 22, 1998, the date of its enactment by sec.
3001(a) of the Internal Revenue Service Restructuring and Reform
Act of 1998, Pub. L. 105-206, 112 Stat. 726.

alleges, and her master's degree expenses were incurred to maintain and improve her skills. In the alternative, she asserts that the expenditures were required as a condition to the retention of an existing employment relationship, status, or rate of compensation.

Section 162 allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Although section 162 does not explicitly mention expenditures for education, section 1.162-5, Income Tax Regs., provides objective tests for determining whether such expenditures are deductible. Diaz v. Commissioner, 70 T.C. 1067, 1072-1073 (1978), affd. without published opinion 607 F.2d 995 (2d Cir. 1979); Taubman v. Commissioner, 60 T.C. 814, 817 (1973).

The general rule of the regulation allows the deduction of educational expenses if the education maintains or improves the skills required by the individual in his or her employment or other trade or business, or meets the express requirements of the employer or applicable law. Sec. 1.162-5(a), Income Tax Regs.

Section 1.162-5(b)(2) and (3), Income Tax Regs., provides, however, that if a taxpayer is pursuing a course of study that meets the minimum educational requirements for qualification in that employment or will qualify her for a new trade or business, the expenditures are not deductible.

Since the satisfaction of either of the two "disallowance" tests will prohibit the deduction whether or not either of the two "allowance" tests is met, the analysis of the Court will begin with the disallowance tests of section 1.162-5(b)(2) and (3), Income Tax Regs.

Petitioner, in advancing her argument, focuses on the similarities between her duties as a financial analyst and those of the associates at the investment banking firms of M-L and James. She characterizes both positions as "investment banking" positions. The fact that an individual is already performing service in an employment status, however, does not establish that she has met the minimum educational requirement for qualification in that employment. Sec. 1.162-5(b)(2)(i), Income Tax Regs. The minimum education necessary to qualify for a position must be determined from a consideration of such factors as the requirements of the employer, the applicable law and regulations, and the standards of the profession, trade, or business involved. Davidson v. Commissioner, T.C. Memo. 1982-119.

Although the duties of the analyst and the associate overlapped, the financial analyst position was, at both M-L and James, a subordinate temporary position lasting for a maximum of 3 years. The associate position at both companies was a permanent career position that could lead to higher level positions in the investment banking firm. The Court notes also

that in corporate literature, James describes its corporate finance department as consisting of "23 investment bankers and eight financial analysts".  The Court concludes that associates are among the "23 investment bankers" and that James did not consider the financial analysts as having yet achieved the status of "investment banker", even though in a broader sense they were in the investment banking business.

At M-L, James, and in the investment banking industry in general, during the years 1995 to 1996, an M.B.A. degree was required to obtain a position as an associate, an investment banker, with an investment banking firm.  Because the expenses at issue were incurred and paid by petitioner in order to obtain a degree meeting the minimum educational requirements for qualification as set by her employers and the industry in which she was working, they are nondeductible personal expenditures. See McCartin v. Commissioner, T.C. Memo. 1987-159; Antuna v. Commissioner, T.C. Memo. 1977-435; sec. 1.162-5(b)(1), Income Tax Regs.

Even if petitioner's M.B.A. was not the minimum education requirement to be an investment banker, if the degree would "lead to qualifying * * * [her] in a new trade or business", her expenses are not deductible.  Sec. 1.162-5(b)(3), Income Tax Regs.  This rule applies even though the studies are required by the employer or applicable law, even though the taxpayer does not

intend to enter the new field of endeavor, and even though the taxpayer's duties are not significantly different after the education from what they had been before the education. Kersey v. Commissioner, T.C. Memo. 1993-641, affd. without published opinion 50 F.3d 15 (9th Cir. 1995); sec. 1.162-5(b)(1), Income Tax Regs.

If the education qualifies the taxpayer to perform significantly different tasks and activities than could be performed before the education, the education qualifies the taxpayer for a new trade or business. Glenn v. Commissioner, 62 T.C. 270, 275 (1974); Weiszmann v. Commissioner, 52 T.C. 1106, 1110 (1969), affd. per curiam 443 F.2d 29 (9th Cir. 1971). Therefore, if petitioner's master's degree qualified her to perform significantly different tasks and activities than she performed before the education, the education qualified petitioner for a new trade or business.

After petitioner obtained her master's degree in management, she did not obtain a position with an investment banking firm. Petitioner was hired by Spring Industries, a manufacturer of home furnishings, into its "General Management Program". A prerequisite to being hired under the program was an M.B.A. or equivalent. The purpose of the general management program was to train future executives and prepare them for careers in marketing, finance, or operations management.

Petitioner argues that being hired into the general management program did necessarily mean an assignment to upper management would follow. Although petitioner's education would not by itself qualify her for a new profession, the regulation requires only that the program of study being pursued "will lead to qualifying" petitioner in a new trade or business. Sec. 1.162-5(b)(3)(i), Income Tax Regs. Payments for education that must be combined with an examination or experience to qualify a taxpayer for a new trade or business are not deductible. See Cristea v. Commissioner, T.C. Memo. 1985-533 (and cases cited therein).

From the record in this case, the Court concludes that petitioner's degree led to qualifying her to perform significantly different tasks and activities than she performed before the education. The education therefore qualified petitioner for a new trade or business.

Because petitioner's satisfaction of both "disallowance" tests of section 1.162-5(b)(2) and (3), Income Tax Regs., will prohibit the deduction of her educational expenses, the Court will not address respondent's argument that petitioner was not engaged in a trade or business in 1998.

To the extent the Court has not addressed other arguments and contentions petitioner raised, the Court concludes they are without merit. Respondent's determination that petitioners are

not entitled to deduct the educational expenses at issue here is sustained.

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered</u>

<u>for respondent</u>.