Irving **FALK**, Evalene **Falk**, Morris **Milstein** and Ada **Milstein**, Petitioners,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Respondent.

No. 20222.

United States Court of Appeals
Fifth Circuit.

June 2, 1964.

W. S. Miller, Jr., Eichenbaum, Scott & Miller, Little Rock, Ark., for petitioners.

Crombie J. D. Garrett, Atty., Dept. of Justice, Crane C. Hauser, Chief Counsel, IRS, Glen E. Hardy, Atty., IRS, Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Joseph Kovner, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before BROWN, WISDOM and BELL, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

The Taxpayers[1] appeal from an adverse decision of the Tax Court holding that the change from a cash to an accrual basis for the tax year 1954 was initiated by the Taxpayer so that pre-1954 adjustments for inventory and accounts receivable were permissible. 26 U.S.C.A. § 481(a) (1) (2).

The facts and issues involved are not complicated. Our statement merely repeats or paraphrases that of the Tax Court and the Government's brief.

Taxpayers, through the F & M partnership, were, and had been for a number of years, engaged in the business of purchase and sale of both scrap steel and new industrial steel products. For years prior to 1954 the partnership maintained its books and records and filed its Federal partnership returns of income on the cash basis of accounting and on the basis of a calendar year. The partnership's 1954 return of income which was filed in 1955 was prepared on an accrual method of accounting without making any adjustments as of the beginning of 1954 because of the change in the method of reporting income from the cash to an accrual basis. This return contained a footnote on page 9 to the statement that it was prepared on an accrual method which read as follows: "Accrual Method in accordance with instructions of Revenue Agent."

In September 1954 a revenue agent was engaged in making an audit of the books and records of the partnership. He stated to one of the partners and to

1. Irving Falk and his then wife, Evalene Falk, Morris and Ada Milstein.

the certified public accountant (Garelick) who had for a number of years prior to 1952 and throughout the years here involved supervised the annual audits and the preparation of returns of income for the partnership that he had come to check the partnership's records for the years 1952 and 1953. This audit was the first ever made by an internal revenue agent of the books of the partnership or of the personal returns of Taxpayer Falk. At a meeting attended by the partnership's certified public accountant, Falk, and the revenue agent on September 20, 1954, the agent told the partnership's accountant and Falk that the partnership should take inventories in 1954, and Falk said that they would. The agent also told the partnership's accountant and Falk that the proper accounting method for keeping the partnership's records and filing its 1954 return was an accrual basis and that the partnership should be put on that basis in 1954. The accountant asked the agent to make this change in the method of computing the partnership's income· effective in 1952 and the agent replied that he would not do this since certain partnership income would escape taxes if he changed the method of reporting income for the year 1952.

Subsequent to this meeting, the accountant consulted Taxpayer's counsel with respect to the tax effect of changing the partnership's method of accounting as discussed in his conversation with the revenue agent. Neither the partnership's accountant nor the partners heard further from the agent or from any person connected with the Internal Revenue Service with respect to the preparation and filing of the partnership's 1954 return of income prior to the date of the filing of that return. In the preparation and filing of the partnership's 1954 return of income, the accountant required that the notation be placed on the return stating that it was being filed on an accrual method in accordance with the instruction of the revenue agent.

The internal revenue agent who talked with the partnership's accountant and Falk submitted a report with respect to the partnership's income for the year 1952 on September 24, 1954, in which he recommended no change in the income as reported.[2] In 1956 another agent examined the 1953 returns, but made no adjustments to change the accounting to an accrual basis. Later on this same agent examined the 1954 returns and proposed the adjustments here in question.[3]

After a review of the evidence briefly summarized, the Tax Court reached this basic conclusion. "Upon considering all the evidence, we have drawn therefrom the inference that the agent told the accountant and Falk to have the partner-

2. This report contained the following comment:

The taxpayer apparently has substantial inventories, but the taxpayer does not take a physical inventory, ·or record inventories. Inventories were not taken into account in filing the return. The taxpayer also has substantial accounts receivable and accounts payable. Sales, purchases, and expenses, however, are reported on the cash basis. In accordance with the regulations the taxpayer should be on the accrual basis. Under current Court rulings it appears that to change the taxpayer to the accrual basis at this time, would result in the loss of tax on the opening inventory and accounts receivable, which are substantial at the beginning of the first open year.

It may be possible to change the taxpayer over to the accrual basis, when reg-

ulations are written, under Sec. 481 of the Internal Revenue Code of 1954, without the Government losing substantial revenue.

Forms 941 and 940 were examined from retained copies and found correct as filed. Income and expenses appear correct as reported (on the cash basis).

3. Added to income was:

| Item | Amount |
| --- | --- |
| Inventory January 1, 1954 | $203,947.00 |
| Accounts receivable January 1, 1954 | 119,116.92 |
| Accounts payable January 1, 1954 | (42,197.44) |
| Total adjustment | $280,866.48 |

The Tax Court permitted this to be spread evenly over a ten-year period beginning with 1958. 26 U.S.C.A. § 481 (b) (4) (B).

ship take an inventory for 1954 and that a proper method of keeping the partnership's books and reporting its income was an accrual basis. However, we do not infer from the testimony that the agent instructed or required that the partnership return of income for 1954 be filed on an accrual basis. It is clear from the report of the agent that he was unwilling to recommend that the partnership be required to change its method of accounting even though in his opinion the cash method was not a proper one." Since the agent did not "require" the change, the Tax Court next concluded that the change was "initiated" by the Taxpayers, and hence the adjustment was literally within, and therefore required by, § 481(a) (2).

■ The Taxpayers' principal attack is that this crucial fact finding is clearly erroneous. Cf. F.R.Civ.P. 52(a). Complaint is also made of the admission of Agent Davis' oral testimony since he acknowledged that apart from the written report (note 2, supra) he had no independent recollection in 1961 of these 1954 conversations. The Government's response is dual. First, it stands on the fact findings and, second, it contends that as a matter of law a taxpayer must be viewed as initiating a change unless the change is required by a formal deficiency determination. This alternative ground forces it to urge that we heed the dissenter, not the Tenth Circuit, in United States v. Lindner, 10 Cir., 1962. 307 F.2d 262. On our approach we do not reach the alternative ground. Although it is not without its difficulties, we conclude that the fact findings pass the muster of clearly erroneous.

Before analyzing the evidence, it is helpful to discuss, as does the Government's brief, the workings of a change in the method of accounting.

The federal income tax on individuals is imposed on their "taxable income." Sections 1 and 63, Int.Rev.Code of 1954, 26 U.S.C.A. §§ 1, 63. Taxable income is computed "under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books." Section 446(a). There are several permissible methods of accounting under which a taxpayer may compute taxable income. Among them are the cash receipts and disbursements method and accrual method. 28 U.S.C.A. § 446(c). Here, for years prior to 1954, the partnership maintained its books and records and filed its federal partnership returns on the cash receipts and disbursements method of accounting and in 1954 on an accrual method.

If a taxpayer computes taxable income under different methods of accounting in two successive years, adjustments may be required because of the change in the method of accounting. 28 U.S.C.A. § 481. Adjustments must be made if the change in method results in items of taxable income being duplicated or omitted. However, no adjustments can be taken into account in respect of any pre-1954 year "unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer." [4]

As a matter of background, under the 1939 Code, if the Commissioner required the taxpayer to change to the accrual method, as when inventories were involved, the courts generally held that the taxpayer had to be allowed opening in-

4. Section 481 of the 1954 Code, 26 U.S.C.A. § 481, as amended, states:
"(a) General Rule—In computing the taxpayer's taxable income for any taxable year (referred to in this section as the 'year of the change')—(1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then (2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustments in respect of any taxable year to which this section does not apply *unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer."*

The italicized language was added to Section 481(a) (2) of the 1954 Code by

ventory and accounts receivable without inclusion in income so that, in effect, the Commissioner could secure adjustments only as far back as the statute of limitations would permit. See Commissioner v. Schuyler, 2 Cir., 1952, 196 F.2d 85; Commissioner v. Dwyer, 2 Cir., 1953, 203 F.2d 522. If, however, the taxpayer voluntarily desired to change his method, adjustment might be required. See Advance Truck Co. v. Commissioner, 9 Cir., 1958, 262 F.2d 388; Brookshire v. Commissioner, supra; 2 Mertens, Federal Income Taxation § 12.21.

Section 481 of the 1954 Code as originally enacted changed the 1939 Code rule and permitted taxpayers who changed their method, whether with or without the consent of the Commissioner, to refrain from taking into account adjustments attributable to income or deduction items in years prior to 1954.

■ The Committee Reports relating to the Technical Amendments Act of 1958 clearly describe the purpose of the amendments to Section 481 to require adjustments when the change was due to a taxpayer's volition.[5]

■ The Tax Court recognized that Davis did not have an independent recollection of the examination of the books of the partnership or of the conversations with Falk and the accountant. But we think at the outset that it was permissible to allow the oral testimony of Agent Davis as well as his report (see note 2, supra). No matter how logical it might seem, the search for truth long after an event is not advanced by excluding entirely the record of a recollection when, say, memory is refreshed, or as here excluding altogether oral testimony which reaffirms under oath the record of a past recollection. NLRB v. Tex-Tan, 5 Cir., 1963, 318 F.2d 472 at 484; McCormick, Evidence §§ 9, 276–80.

On the other hand we must make clear that there is word testimony from Falk and the accountant which is not categorically disputed either in Davis' report or his oral testimony. Thus, the accountant testified that Davis "definitely" did "instruct [us] to file the return on the accrual basis" which instruction he thereafter proceeded "to comply with" and that had "the Agent not required this change" he would not have "voluntarily changed the method of accounting used by the partnership." Likewise, Falk testified that the Agent Davis "did * * * give [us] * * * instruction" and " * * * requirements,"

Section 29, Technical Amendments Act of 1958, 72 Stat. 1606.

5. In the House Report (h. Rep. No. 775, 85th Cong., 1st Sess. 19–20 (1958–3 Cum. Bull. 811, 829–30)), it is stated:

"Generally, under the 1939 Code taxpayers who requested permission to change their method of accounting were required to make certain adjustments, in the year of change * * *. However, where the Internal Revenue Service had required taxpayers to change their method of accounting, the courts generally did not require these adjustments * * *.

"Section 481 [as originally enacted] * * * requires these adjustments to be made in full to the extent that they are attributable to 1954 or a subsequent year. However, no adjustments are required which are attributable to years before the application of the 1954 Code.

"Your committee sees no reason why the pre-1954 Code year adjustments should not be made when taxpayers, of their own volition, have changed their method of accounting. This was, in fact, generally the practice under the 1939 Code * * *

"This bill does not affect present law with respect to pre-1954 adjustments where the change in method of accounting is not initiated by the taxpayer. Where the change is initiated by the taxpayer, the adjustments * * * must be made * * *.

"Changes in methods of accounting initiated by the taxpayer include a change in method of accounting which he originates, by requesting permission of the Commissioner to change, and also cases where taxpayer shifts from one method of accounting to another without the Commissioner's permission. *A change in the taxpayer's method of accounting required by a revenue agent upon examination of the taxpayer's return would not, however, be considered as initiated by the taxpayer.*" (Emphasis supplied.)

the requirements being for "inventory, the taking of inventory" in " * * * order to put us on the accrual basis in 1954" since the agent "did * * * tell [us] to file [our] return on the accrual basis for 1954."

■ In our judgment there are several factors which entitled the trier of facts to regard this testimony as considerably less emphatic and positive than the words first appear. The words are, first, spoken by interested parties, a factor which any trier ordinarily can take into account. See Heil Beauty Supply v. Commissioner, 8 Cir., 1952, 199 F. 2d 193; Hoefle v. Commissioner, 6 Cir., 1940, 114 F.2d 713, 714–715; O'Laughlin v. Helvering, D.C.Cir., 1935, 81 F.2d 269; Carmack v. Commissioner, 5 Cir., 1950, 183 F.2d 1 at 2, cert. denied, 1950, 340 U.S. 875, 71 S.Ct. 121, 95 L.Ed. 636; F.R.Civ.P. 41(b), 52(a).[6] But we need not press this far because the language employed by the Taxpayer's counsel and the witnesses is almost altogether in conclusory terms. For example, the question was not asked: "What did Agent Davis *say*?" Rather, it was, for example, "Did he *instruct* you?" Again, the accountant was asked had "the agent * * not *required* this change, would you have voluntarily changed * * * ? " The witnesses did not purport to say that Agent Davis said the word "required" or "I require" or the like. This was their impression, perhaps well founded, but nevertheless a conclusion. When asked about what "his requirements" were, the answer was "inventory, the taking the inventory."

In addition, other testimony cast considerable doubt that the agent either stated these things in emphatic terms, or could possibly have meant them to be so understood. To begin with, Falk who testified to overhearing these emphatic "instructions" revealed on cross examination a complete lack of any understanding of the nature or significance of the meaning of the so-called instruction. Likewise, it is uncontradicted that the accountant suggested to Davis that the year 1952 be recomputed on the accrual basis, but the agent declined because of loss of revenue to the Government. Agent Davis reflected his concern with loss of tax revenues from any such change over. If he was unwilling to change for 1952, the trier of fact was entitled to infer that the only sensible conclusion was that he would be likewise unwilling for 1954. And yet it is perfectly plain that if he in fact did give categorical instructions to make the change in 1954, the change was not initiated by the Taxpayer and under the literal wording of § 481, adjustments for pre-1954 years could not be made. The discriminating care with which this agent was "protecting"—if not over-protecting—the revenues of the United States reads a good deal into the oral testimony he was able to give. To the question, "Did you ever in your experience as a revenue agent make what you regarded as a change in accounting method for a taxpayer," he answered, "I don't recall ever changing anyone's accounting methods specifically, no, sir."

The Tax Court was also entitled to take into account the Taxpayer's situation. If the Taxpayers made the change themselves, they knew, of course, that pre-1954 adjustments would be required. Having been alerted by the examination in 1954 to their obvious error in not using the accrual system, the handwriting was on the wall that the error would be picked up in 1955 or thereafter. At such a time, adjustments could go back through 1954. The only possible way then for the Taxpayers to escape the payment of taxes on admitted unreported income was for them to treat the agent's suggestions or advice as mandatory instructions. Without in the least implying any moral overtones, this was powerful self-interest which a trier hardly has to ignore.

6. There may be, of course, some occasions in which the trier must credit even an interested witness. Foran v. Commissioner, 5 Cir., 1948, 165 F.2d 705.

As fact finding is committed to the Tax Court subject to a very limited review, Commissioner v. Duberstin, 1960, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218, it was perfectly plausible for the Tax Court to draw from all of this evidence the limited "inference that the agent told [Taxpayers] to take * * * an inventory for 1954 and that a proper method of keeping the partnership's books and reporting its income was on an accrual basis." And as a corollary, it was likewise entitled to conclude that "we do not infer from the testimony that the agent instructed or required that the partnership return of income for 1954 be filed on accrual basis." That is the end of it.

Affirmed.