HARRY GERMAN, JR. AND CAROL GERMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
German v. Commissioner
Docket No. 12711-90
United States Tax Court
T.C. Memo 1993-59; 1993 Tax Ct. Memo LEXIS 60; 65 T.C.M. (CCH) 1931; February 22, 1993, Filed *60 Decision will be entered under Rule 155. For petitioners: John Gigounas and Edward B. Simpson. For respondent: Elizabeth Groenewegen and Debra K. Estrem. DAWSON
DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was heard by Chief Special Trial Judge Peter J. Panuthos pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the Chief Special Trial Judge's opinion, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PANUTHOS, Chief Special Trial Judge: In a notice of deficiency dated March 16, 1990, respondent determined a deficiency in petitioners' 1988 Federal income tax in the amount of $ 4,869, and an addition to tax pursuant to section 6653(a)(1) in the amount of $ 243. [2] Petitioners filed a timely petition. Petitioners also filed an amended petition alleging that respondent *61 is estopped from examining petitioners' Federal income tax returns on any and all items. Respondent was granted leave to file an amended answer which raises as an additional issue a change in the method of accounting employed by petitioners. The amended answer alleges an increased deficiency totaling $ 20,680 and additions to tax pursuant to section 6653(a)(1) in the amount of $ 1,034 and section 6661 in the amount of $ 5,170 for the 1988 taxable year. During trial, respondent adjusted her claim, alleging that the deficiency should be reduced to $ 17,546 and the additions to tax pursuant to section 6653(a)(1) reduced to $ 877 and section 6661 reduced to $ 4,387. Following concessions by the parties, [3] the issues for decision are: (1) Whether respondent *62 should be permitted to change petitioners' method of accounting relating to the deduction of certain interest expenses; (2) whether such interest is personal interest subject to the disallowance provisions of section 163(h); (3) whether petitioners are entitled to additional deductions for job-seeking expenses and certain other expenses relating to their antique business; and (4) whether petitioners are liable for the addition to tax for negligence pursuant to section 6653(a)(1). *63 FINDINGS OF FACT Some of the facts are stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of filing the petition herein, petitioners resided in Lafayette, California. At all times relevant to this proceeding, petitioners were husband and wife who filed joint Federal income tax returns. Around 1981, petitioners each commenced studies at John F. Kennedy University Law School (JFK) located in Walnut Creek, California. They graduated and received their J.D. degrees from JFK in 1986. Neither petitioner is admitted to the practice of law in any State. 1. Work Experience
Prior to and during their attendance at JFK, Carol German (hereinafter Mrs. German) was employed as a claims examiner for an insurance company and Harry German, Jr. (hereinafter Mr. German) was employed as a legal researcher. On their 1985 tax return, petitioners reported income and deductions on Schedule C for German's Legal Research, Inc., a company which provided legal services to attorneys. The letterhead listed petitioners as "Harry German J.D.; M.A.; B.S." and "Carol German J.D.;B.S." Sometime in 1987, Mr. German *64 was employed by an attorney named John Robinson. Mr. German's position involved legal research, hearing representation, as well as clerical and administrative duties. Mr. German ceased working for John Robinson in October 1987 as a result of a dispute. Thereafter, Mr. German applied for and received unemployment compensation from the State of California. As a condition to continued receipt of unemployment compensation, Mr. German filed with the Employment Development Department weekly reports listing attempts which he made to secure employment. His efforts at securing employment included sending out resumes and placing telephone calls to potential employers. He also visited some places of business without an appointment to inquire as to employment. During this time, petitioners resided in Pittsburg, California. Although petitioner generally confined his job search to the area surrounding his home (San Francisco Bay Area), he occasionally would travel farther away, such as to Los Angeles. Despite his efforts, Mr. German was not successful in obtaining employment during 1988. For the years 1987 and 1988, petitioners bought and sold antiques. [4] They did not maintain a store *65 at which such items were regularly held out for sale. Rather, they traveled about, renting spaces at antique shows and fairs. Petitioners did not maintain any books or records pertaining to this activity. At the time of trial, Mr. German was employed as a workman's compensation claims examiner and Mrs. German was employed as a manager with an insurance company. 2. Interest Expense
Petitioners financed their respective legal educations with loans obtained through education loan programs sponsored by the State of California and the Federal Government. According to a consolidated loan statement sent to Mr. German by the Student Loan Marketing Association (Sallie Mae), the principal amount owed by Mr. German for his law school loans as of June 1987 was $ 24,102.65, bearing annual interest at 9 percent. A similar consolidated statement sent to Mrs. German by Sallie Mae states that the principal *66 amount of Mrs. German's law school loans as of June 1987, was $ 21,558.44, also bearing annual interest at 9 percent. Petitioners paid approximately $ 840 in interest during 1985. However, on the 1985 return, petitioners deducted $ 22,410 in interest. This amount was determined pursuant to the Rule of 78's. [5] *67 Petitioners were obligated to pay approximately $ 4,109 [6] in interest during 1987, but deducted $ 20,184 in interest on their 1987 return. During 1988, Mr. German did not make any payments on his law school loans because he qualified for deferment. According to the terms of the deferment, interest continued to accrue on the loan principal but was added to the principal in lieu of payment. Mrs. German made a $ 1,944.70 payment on her student loan for 1988. However, pursuant to the Rule of 78's, petitioners deducted $ 14,200 in student loan interest on their 1988 Federal income tax return. Petitioners characterized the Sallie Mae interest deductions as "investment interest" on Schedule A of their 1985, 1987, and 1988 tax returns. On brief, petitioners claimed that their respective law school educations were a business investment and deductible pursuant to section 162. The claimed deductions created carryovers of the purported unused investment interest expense for the years 1985, 1987, and 1988. [7]
*68 3. Examination of Petitioners' Tax Returns
Sometime in March 1987, petitioners' 1985 Federal income tax return was selected for examination. An Internal Revenue Service (IRS) auditor conducted an examination of the 1985 return. Petitioner submitted documentation at an initial meeting. At a second meeting, petitioners submitted a document to the auditor which stated in part that "Harry and Carol German adopt the Accrual method of accounting for the 1985 tax year." The document indicates that petitioners intended to use the Rule of 78's accounting method in calculating deductions for their Sallie Mae interest expense. [8] Petitioners did not complete an IRS Form 3115, which is required to be filed by any taxpayer seeking to change their method of accounting. Furthermore, respondent did not expressly give consent to a change in accounting method. Sec. 446(e); sec. 1.446-1(e)(2)(i), Income Tax Regs.
*69 After the examination was concluded, the matter was referred to respondent's Appeals Office in Sacramento. In June 1988, the matter was returned to the Examination Division for additional examination. The Examination Division ultimately determined that petitioners were entitled to a deduction for interest expense under the accrual method in the amount of $ 29,099. [9] The increased deduction on the 1985 return left petitioners with a carryforward of approximately $ 9,995 which petitioners applied to their 1987 and 1988 returns. In September 1989, petitioners' 1987 return was surveyed by an IRS agent but no examination was conducted. After the survey, the return was accepted as filed. Petitioners were not asked for, nor did they submit, any documentation bearing on the 1987 tax year. As previously noted, petitioners claimed an interest expense deduction of *70 $ 20,184 on their 1987 return. Schedule A of the return noted that petitioners used the Rule of 78's to calculate such deduction. The IRS agent surveying the 1987 return was aware of the notation. Petitioners filed a joint Federal income tax return for taxable year 1988 which reflected adjusted gross income of $ 42,630.53 and taxable income of $ 104.53. Petitioners claimed deductions on Schedule A as follows: State and local income taxes
$    415
Real estate taxes
1,211
Mortgage interest
9,100
Investment interest (per Rule of 78's)
14,200
Contributions
250
Job-hunting expenses
7,725
Balance of 1985 Sallie Mae interest
expense carryover per IRS audit
3,775
$ 36,676
A Schedule C relating to petitioners' antique business reported gross income of $ 966 and total deductions of $ 2,188, resulting in a net loss of $ 1,222. [10]
4. Respondent's Determination
In the *71 notice of deficiency for 1988, respondent disallowed $ 750 of Schedule C expenses relating to petitioners' antique business, disallowed the entire amount claimed on Schedule A, and allowed a $ 5,000 standard deduction. In respondent's amended answer to petitioners' amended petition, respondent seeks to change petitioners' accounting method with respect to the Sallie Mae interest from the Rule of 78's method to the cash method, resulting in a denial of most of the Sallie Mae interest deducted for 1988 and an inclusion in income in 1988 of most of the interest deducted in prior years. In so doing, respondent asserted a different theory for disallowance in her amended answer. OPINION 1. Interest on Student Loans
In the amended answer, respondent proposes to change petitioners' method of accounting with respect to the Sallie Mae interest from the Rule of 78's method to the cash method. In support of this matter, respondent alleges that petitioners failed to secure permission prior to adopting the Rule of 78's method of accounting with respect to such interest. Respondent further alleges that the method used by petitioners does not clearly reflect income and, accordingly, *72 that respondent has authority pursuant to section 446(b) to substitute such method for one that does clearly reflect income. Additionally, respondent proposes that the change in petitioners' accounting method with respect to the Sallie Mae interest requires an adjustment to petitioners' 1988 Federal income tax return under section 481(a) to avoid duplication of amounts previously deducted. (a) Petitioners' method of accounting and application of section 446
Generally, a taxpayer has the burden of overcoming a determination by the Commissioner that a particular method of accounting does not clearly reflect income. Ferrill v. Commissioner, 684 F.2d 261, 263 (3d Cir. 1982), affg. per curiam T.C. Memo. 1979-501. However, respondent bears the burden of proof with respect to any new matter or increase in deficiency pleaded in the answer. Rule 142(a); Wayne Bolt & Nut Co. v. Commissioner, 93 T.C. 500, 507 (1989). "A new theory that is presented to sustain a deficiency is treated as a new matter when it either alters the original deficiency or requires the presentation of different evidence." *73 Id. (citing Colonnade Condominium, Inc. v. Commissioner, 91 T.C. 793, 795 n.3 (1988); Achiro v. Commissioner, 77 T.C. 881, 890-891 (1981)). Thus, it is respondent who must prove that petitioners' method of accounting does not clearly reflect income. See Ferrill v. Commissioner, supra at 265. Petitioners challenge respondent's authority to change their method of accounting with respect to the Sallie Mae interest. They first maintain that respondent is estopped from raising the issue because of a purported "closing agreement" they entered into with respondent. [11] A closing agreement between the taxpayer and the IRS would prevent respondent from adjusting items the treatment of which is specified in such an agreement. Sec. 7121; Nadler v. Commissioner, T.C. Memo. 1992-383. Petitioners failed to introduce any evidence of a closing agreement. A letter written from one of respondent's agents concerning the outcome of the examination of their return does not constitute a closing agreement. Cf. Klein v. Commissioner, 899 F.2d 1149, 1152-1153 (11th Cir. 1990), *74 affg. an unpublished order of this Court. Petitioners also argue that respondent had consented to their change in method of accounting by implication when respondent's agents accepted petitioners' 1985 and 1987 returns. [12] This implied authorization, petitioners argue, should be drawn from the fact that respondent reviewed the prior years' returns and did not disallow deductions claimed under the Rule of 78's. Petitioners do not argue that their method clearly reflects income, but only that they somehow relied on respondent's failure to disallow the treatment in prior years. *75 We do not agree with petitioners' contention. Petitioners had extensive contact with respondent's agents during the examination of the 1985 return and respondent's agent allowed an interest deduction claimed under the Rule of 78's. However, actions of an IRS agent do not necessarily bind respondent. See, e.g., Boulez v. Commissioner, 76 T.C. 209 (1981), affd. 810 F.2d 209 (D.C. Cir. 1987); Pierce Ditching Co. v. Commissioner, 73 T.C. 301, 305-306 (1979). Absent something more binding, such as a closing agreement, the actions of the agents in this case do not constitute respondent's approval of petitioners' method of accounting with respect to the Sallie Mae interest. See Thomas v. Commissioner, 92 T.C. 206, 221-223 (1989). The Commissioner is not estopped from insisting upon a certain method of accounting despite having accepted income tax returns which used a different method in prior years. Union Equity Cooperative Exchange v. Commissioner, 481 F.2d 812, 817 (10th Cir. 1973), affg. 58 T.C. 397 (1972); *76 Thomas v. Commissioner, supra; Pierce Ditching Co. v. Commissioner, supra; Perry v. Commissioner, T.C. Memo. 1960-101). In Thomas v. Commissioner, supra at 225, we stated that: To bar respondent from changing an erroneous method of accounting, which he approved, would allow petitioners to continue distorting their income in future taxable years. * * * To hold that respondent is prohibited from requiring a taxpayer to change from an erroneously approved accounting method to an accounting method which clearly reflects income would defeat the purpose and importance of the statutes' requirement, in section 446(b), that the method of accounting "clearly reflect income".
Petitioners cite several cases [13] which they claim stand for the proposition that respondent is estopped from changing their method of accounting because of implied consent. Petitioners are incorrect in their interpretation of these cases. In most of the cases cited, the accounting method chosen by the taxpayers "clearly reflected income". *77 [14]
It should also be noted that petitioners failed to comply with the requirements in the Code and the regulations concerning changing a method of accounting. Generally speaking, taxpayers are not permitted to unilaterally change their method of accounting without first obtaining permission from the Secretary. Sec. 446(e). The procedures for obtaining permission are set out in sec. 1.446-1(e), Income Tax Regs., and Rev. Proc. 84-74, 1984-2 C.B. 736. These procedures require that the taxpayer file an application on Form 3115 with respondent, within 180 days after the beginning of the taxable year in which it is desired to make the change. Sec. 1.446(1)(e)(3)(i), Income Tax Regs. Petitioners did not file such a form or otherwise seek the approval of respondent prior to changing the method of accounting; thus respondent is not precluded from challenging petitioners' choice of accounting *78 method. The next question is whether respondent is justified in challenging petitioners' method of accounting with respect to the Sallie Mae interest. Generally, where a taxpayer's method of accounting is an acceptable method, respondent is not permitted to require a change. Prabel v. Commissioner, 91 T.C. 1101, 1112 (1988), affd. 882 F.2d 820 (3d Cir. 1989) (citing Bay State Gas Co. v. Commissioner, 75 T.C. 410, 423 (1980), affd. 689 F.2d 1, 7 (1st Cir. 1982); Peninsula Steel Products & Equipment Co. v. Commissioner, 78 T.C. 1029, 1045 (1982); Auburn Packing Co. v. Commissioner, 60 T.C. 794, 798 (1973)). A method of accounting is not acceptable unless it clearly reflects income. Sec. 446(b); Thomas v. Commissioner, supra at 216; sec. 1.446-1(a)(2), Income Tax Regs. Whether income is clearly reflected by a taxpayer's method of accounting is a question of fact. Madison Gas & Electric Co. v. Commissioner, 72 T.C. 521, 555 (1979), affd. *79 633 F.2d 512 (7th Cir. 1980). The timing of interest deductions is a material item subject to the "clear reflection of income" requirement. Prabel v. Commissioner, 91 T.C. at 1114. The facts in the present case indicate that petitioners used the Rule of 78's method for calculating their interest deductions on their student loans. All other deductions claimed on petitioners' returns, specifically including other interest expense deductions, are based upon the cash method of accounting. The Rule of 78's allocates payments due on loans between interest and principal based upon a mechanical fractional computation. It tends to generate, in the earlier stages, the accrual of significantly higher interest deductions than would be available under the cash method of accounting. The cash method generally only allows deductions for interest in the taxable year when actually paid. Sec. 1.461-1(a)(1), Income Tax Regs. Because the interest accruals under the Rule of 78's usually will exceed the scheduled payments, negative amortization may occur. Petitioners contend that the interest deductions calculated under the Rule of 78's *80 results in a clear reflection of income. Respondent contends that petitioners' method of accruing interest does not clearly reflect income. We agree with respondent. The Rule of 78's accrual of interest distorts income and losses as reflected by a comparison with the cash method deduction of interest: Rule
of 78's
Interest
Accrued
Petitioners'
Cash Method
Petitioners'
or
Taxable Income
Deduction of
Taxable Income
Year
Allowed
Under Rule of 78's
Interest
Under Cash Method
1985
[1][2] $ 29,099
--
$   840
$  3,893
1987
20,184
--
4,109
27,894
1988
14,200
$ 105
1,945
24,129
Total
$ 63,483
$ 105
$ 6,894
$ 55,916
Amount of Unreported
Taxable Income Pursuant
Year
to Rule of 78's
1985
$  3,893
1987
27,894
1988
24,024
Total
$ 55,811
*81 By using the Rule of 78's, petitioners claimed significantly higher deductions in the earlier years of the loans. More importantly, petitioners have decreased their yearly taxable income significantly. Although at the end of the loan total accrued interest should be the same under both methods, petitioners have created a tax deferment in the earlier years of the loan. In Prabel v. Commissioner, supra, we offered a similar explanation, although in more detail, of the distorting effects of accruing interest pursuant to the Rule of 78's. [15]
*82 In light of the factors enumerated in Prabel v. Commissioner, supra, and the fact that there is a significant difference between the scheduled payments due each month on the loans and the amount of accrued interest deductions under the Rule of 78's, we agree with respondent. Respondent has met the burden of proving that the Rule of 78's method used by petitioners does not clearly reflect income and that deductions should be based on a method of accounting which does clearly reflect income (the cash method). See sec. 446(b). (b) Section 481(a) adjustments
Because we have concluded that petitioners should deduct the Sallie Mae interest under the cash method, the allowed deduction for 1988 will be significantly less than that claimed by petitioners. However, petitioners had previously deducted large amounts of interest expense in prior years. If no further adjustment takes place in 1988, there is the potential for duplicate deductions in the future under the cash method. It follows that petitioners' 1988 tax return must be adjusted pursuant to section 481 in order to clearly reflect income. See Thomas v. Commissioner, 92 T.C. 206, 227-229 (1989); *83 Primo Pants Co. v. Commissioner, 78 T.C. 705, 726-727 (1982). The adjustment pursuant to the cash method results in a disallowance of most of the student loan interest deductions claimed for the 1988 year and a substantial increase of taxable income on petitioners' 1988 tax return. [16] Cf. Graff Chevrolet Co. v. Campbell, 343 F.2d 568 (5th Cir. 1965), (the Court determined that section 481 entitles the Commissioner to make an adjustment by including omitted income from prior years in the year of the change of accounting method).
Petitioners raise the issue of whether the statute of limitations precludes respondent from making adjustments in petitioners' 1988 taxable year based upon the prior years' returns. *84 Petitioners' argument is without merit. In Graff Chevrolet Co. v. Campbell, supra at 572, the court determined that there is no conflict between section 481 and the statute of limitations. "The statute of limitations is directed toward stale claims. Section 481 deals with claims which do not even arise until the year of the accounting change." Id.; see also Superior Coach of Florida, Inc. v. Commissioner, 80 T.C. 895, 912 (1983). It is not until respondent changes petitioners' method of accounting in 1988 that a claim for additional taxable income arises. While respondent may be precluded by the statute of limitations from determining deficiencies in income tax for some of the prior years, section 481 authorizes an adjustment to income for the 1988 taxable year for the amount of interest expense erroneously deducted under petitioners' accounting practice during closed years. See also Knight-Ridder Newspapers, Inc. v. United States, 743 F.2d 781, 797 (11th Cir. 1984). Section 481 is used to complement section 446. It is not meant to provide a means to correct errors of past *85 years, but rather is intended to take into account in the year of change (1988) those adjustments which are necessary solely by reason of the change in accounting method in order to prevent amounts from being duplicated or omitted. Id.; see also Thomas v. Commissioner, supra at 228; Primo Pants Co. v. Commissioner, supra at 727. 2. Character of the Sallie Mae Interest Expense
Having decided the issue of the timing of deductions for the Sallie Mae interest expense (and the related adjustments pursuant to section 481(a)), we must also decide the character of such interest expense. If the Sallie Mae interest is a trade or business expense under section 162 as claimed by petitioners, [17] *86 the entire amount paid would be deductible. If, however, the interest paid does not qualify as a trade or business expense, but rather constitutes personal interest, the deduction would be limited under a phase-out provision. [18] We agree with respondent that the interest in question is personal interest subject to the phase-out provision. Section 162 allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Such expenses may include educational expenses such as tuition, books, and interest on a student loan. However, in order for the educational expense to be deductible, the expense must meet the requirements set forth in section 162 and its corresponding regulations. Pertinent to this case is the fact that educational expenses which will qualify the taxpayer for a new trade or business are not deductible under section 162. Diaz v. Commissioner, 70 T.C. 1067 (1978), *87 affd. in an unpublished opinion 607 F.2d 995 (2d Cir. 1979); Weiszmann v. Commissioner, 52 T.C. 1106 (1969), affd. per curiam 443 F.2d 29 (9th Cir. 1971); sec. 1.162-5(b)(1) and (3), Income Tax Regs. Petitioners claim that the education they received does not qualify them for a new trade or business. Respondent does not agree and, for reasons stated below, we concur with respondent. The fact that petitioners were employed as legal researchers (referring to their employment with German's Legal Research, Inc.) during some of their schooling at JFK does not mean that law school has not trained them for a new trade or business. Although petitioners' trade or business as legal researchers may have involved skills associated with the practice of law, it is well settled that the exercise of law-related skills by non-lawyers constitutes a trade or business separate and distinct from the practice of law. See, e.g., O'Donnell v. Commissioner, 62 T.C. 781 (1974), affd. in an unpublished opinion 519 F.2d 1406 (7th Cir. 1975). Thus, for example, in *88 Pedolsky v. Commissioner, T.C. Memo. 1982-157 (a paralegal), and McDermott v. Commissioner, T.C. Memo. 1977-31 (a claims representative in the legal department of an insurance company), each of the taxpayers was not entitled to deduct expenses incurred in attending law school, as such training qualified them for a new trade or business. Petitioners also argue that the education in question did not qualify them for a new trade or business because the law school they attended (JFK) is not accredited by the American Bar Association and they therefore could not take a State bar examination. This argument also fails. The State of California offers an examination known as the First-Year Law Students' Examination (also known as the "baby bar exam") (Ca. Rules Regulating Admission to Practice Law, Rule 8, sec. 1). The examination entitles students of unaccredited law schools, who receive a passing grade, to sit for the California Bar Examination upon completion of their law studies. The test is generally given at the end of the first year of law school, although it can be taken at a subsequent time. If the examination is *89 taken at a later date, the student will only be given credit for one year of law study as of the date of passing, unless, upon petition and for good cause, the committee on admissions decides that credit should be given for additional years of study (Ca. R. Admis. Rule 7, sec. 11). In the present case, the record does not indicate whether petitioners sat for the First-Year Law Students' Examination after their first year of studies. However, even if they did not, petitioners may have been able to take the examination at a later date without being disqualified from the California Bar Examination. Furthermore, if petitioners did not in fact take the examination after the first year, according to the California Rules on Admission, they could petition the committee on admissions to obtain credit for additional years of study to be eligible to take the California Bar Examination. Thus, all of the law school courses taken could lead toward qualification in a new trade or business. In this regard, it is not necessary that the individual meet all the requirements needed for his profession. See also Feistman v. Commissioner, 63 T.C. 129 (1974) (Court denied *90 taxpayer's claimed deductions for law school expenses despite taxpayer's failing the State bar examination twice). See also Diaz v. Commissioner, 70 T.C. at 1074-1075. Since the Sallie Mae interest expenses are not deductible under section 162, the limitations under section 163 on the deductibility of such expenses are applicable. 3. Other Expenses
(a) Job-hunting expenses
Petitioners claimed $ 7,725 in job-hunting expenses on Schedule A of their 1988 return, which amount respondent disallowed in full in the notice of deficiency. Most of the amount claimed was composed of travel expenses; however, petitioners also submitted petty cash receipts for other expenses purportedly incurred in the pursuit of employment. Petitioners concede $ 2,171.55 of this amount; consequently, only $ 5,553.45 is at issue. Respondent determined that petitioners failed to satisfactorily substantiate these expenses. [19] For the reasons expressed below, we agree with respondent. *91 Section 162 permits deductions for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. This includes expenses incurred in seeking employment in the taxpayer's trade or business. See, e.g., Primuth v. Commissioner, 54 T.C. 374 (1970). These expenditures are deductible under section 162(a) regardless of whether employment is obtained. Cremona v. Commissioner, 58 T.C. 219 (1972). Petitioners bear the burden of proof on this issue. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Under section 274(d), however, no deduction for travel expense claimed under section 162 is allowable unless substantiated consistent with the strict requirements of that section. See Smith v. Commissioner, 80 T.C. 1165 (1983). Section 274(d) provides that the taxpayer must substantiate "by adequate records or by sufficient evidence corroborating the taxpayer's own statement (A) the amount of such expense or other item, (B) the time and place of the travel * * *, (C) the business purpose of the expense or other *92 item". The regulations further clarify the requirements as follows: (i) * * * To meet the "adequate records" requirements of section 274(d), a taxpayer shall maintain an account book, diary, statement of expense or similar record * * * and documentary evidence * * * which, in combination, are sufficient to establish each element of an expenditure specified in paragraph (b) of this section. * * *. (ii) Account book, diary, etc. An account book diary, statement of expense or similar record must be prepared or maintained in such manner that each recording of an element is made at or near the time of the expenditure.
Sec. 1.274-5(c)(2), Income Tax Regs.
Petitioners attempted to substantiate their job-hunting expenses by offering into evidence a "log" of the travel expenses Mr. German allegedly incurred while seeking employment. The "log" is not sufficient to substantiate these expenses. The entries in the log were not recorded at or near the time the purported expenses were incurred. Sec 1.274-5(c)(2)(ii)(a), Income Tax Regs. In fact, it appears that the log was created a short time before the trial. Petitioners argue that it is a compilation of items taken from *93 Mr. German's calendar. However, the calendar was never introduced into evidence. Furthermore, the entries in the log do not explain the business purpose of the purported expenses. Sec. 1.274-5(c)(2)(ii)(b), Income Tax Regs. They merely indicate the origination and destination points, total miles traveled, and expenses incurred. We hold that the strict substantiation requirements of 274(d) have not been met. Cf. Smith v. Commissioner, supra.
As for the other expenses purportedly incurred while seeking employment, all that was submitted into evidence were 12 identical unsigned petty cash receipts, each showing $ 216 for "copy service, phone calls, paper, envelopes, stamps, fax, misc." The similarity of the slips for each month strains credulity. Furthermore, they are inconclusive as to the nature of these purported expenditures. General vague proof, whether offered by testimony, documentary evidence, or records will not suffice. Cf. Smith v. Commissioner, supra at 1172. Since petitioners have failed to meet their burden of proof, we need not consider respondent's argument that petitioners were not seeking *94 employment in the same trade or business. Thus we uphold respondent's determination. (b) Antique business
Petitioners claimed a Schedule C loss on their 1988 return for an antique business. At issue are only two items: (1) $ 600 deducted for rent on business property and (2) $ 150 deducted for utilities and telephone service. [20] As for the $ 600 deducted for rent, we hold that petitioners are entitled to this deduction. Petitioners introduced into evidence various receipts and canceled checks associated with the rental needs of their antique business. We hold those items submitted sufficient to satisfy petitioners' burden of proof. Petitioners also deducted $ 150 for *95 utilities and telephone expense. These expenses were incurred by petitioners at their home and purportedly represent a portion of the total expenditures generated at home for utilities and telephone service. We sustain respondent's disallowance of the deductions for these expenses. Petitioners did not offer any evidence, besides their own testimony, explaining how these costs related to their antique business. See sec. 262. 4. Negligence
The final issue for decision in this case is whether petitioners were negligent and therefore are liable for the addition to tax pursuant to section 6653(a)(1). Section 6653(a)(1) provides that if any part of the underpayment is due to negligence or disregard of rules or regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. Negligence has been defined as the "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985), quoting (Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967)); see also Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), *96 affg. 79 T.C. 714 (1982). Generally, a taxpayer bears the burden of proving that he or she was not negligent. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972); Enoch v. Commissioner, 57 T.C. 781, 802 (1972). Thus, with respect to the addition to tax determined in the notice of deficiency, petitioners have the burden of proof. However, with respect to the increased addition to tax asserted in the amended answer, respondent bears the burden of proving petitioners were negligent. Rule 142(a). We find petitioners negligent for the portion of the underpayment associated with the disallowed job-hunting expenses and the utility and telephone expenses. Petitioners claimed these expenses as deductions for 1988, yet were unable to adequately substantiate them. In particular, petitioners claimed travel expenses associated with seeking employment without satisfying the clearly expressed substantiation requirements found in section 274. Petitioners are well-educated individuals with extensive employment backgrounds. However, despite their accomplishments, petitioners did not maintain *97 adequate books or records. We find the actions of petitioners to be negligent. Because a part of the underpayment in tax is due to negligence, the addition under section 6653(a)(1) applies to the entire underpayment. To reflect the concessions made by the parties and our conclusions with respect to the disputed issues, Decision will be emtered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent also determined an addition to tax of 50 percent of the interest due on the deficiency pursuant to sec. 6653(a)(1)(B). However, respondent, having recognized that this subsection did not apply for the year in issue, conceded this addition to tax at trial.↩
3. In the amended answer to petitioners' amended petition, respondent conceded that petitioners were entitled to deduct $ 1,692 in personal interest which was not claimed on the 1988 return. Respondent also conceded that petitioners substantiated $ 8,477 of the $ 9,100 mortgage interest disallowed in the notice of deficiency. Petitioners on brief conceded the remainder of the mortgage interest deduction ($ 623) (petitioners erroneously refer to their concession as $ 653 rather than $ 623). Petitioners on brief also conceded $ 2,171.55 of the $ 7,725 claimed as "job-hunting expenses" on the 1988 return. At trial, respondent conceded State and local income taxes ($ 415), real estate taxes ($ 1,211), and contributions ($ 250) claimed by petitioners on their 1988 return, as well as the sec. 6661 addition to tax. Also, petitioners raised several issues in their petition and amended petition but did not present evidence or argument on brief in support thereof. In this regard, we deem those issues conceded. Rule 142(a). See Calcutt v. Commissioner, 84 T.C. 716, 721-722↩ (1985).
4. Petitioners reported their income and expenses from this activity on Schedules C for taxable years 1987 and 1988.↩
5. The Rule of 78's is a method of allocating interest on a loan among time periods during the term of the loan. The amount of interest allocable to each period is determined by multiplying the total interest payable over the life of the indebtedness by a fraction, (a) the numerator of which is the number of periods remaining on such indebtedness at the time the calculation is made and (b) the denominator of which is the sum of the periods' digits for the term of the indebtedness. See Prabel v. Commissioner, 91 T.C. 1101, 1104-1105 (1988), affd. 882 F.2d 820↩ (3d Cir. 1989).
6. There is nothing in the record which indicates that this amount was actually paid or was in fact the precise amount owed. However, $ 4,109 would be the approximate amount petitioners were obligated to pay in 1987 according to the consolidated loan statement of the Student Loan Marketing Association (Sallie Mae).↩
7. For tax year 1985, petitioners carried over to the 1987 tax year $ 9,995 of unused Sallie Mae interest. This amount was added to the interest deduction claimed for the 1987 taxable year. The result in 1987 was that only a portion of the 1985 interest deduction carryover was used, resulting in a further carryover of $ 3,775 to the 1988 taxable year.↩
8. As a result of this document, the amount of interest deduction originally claimed by petitioners on their 1985 return was increased significantly.↩
9. This amount includes the $ 22,410 petitioners derived under the Rule of 78's plus an additional $ 6,689 for which no explanation appears in this record.↩
10. At issue are claimed rental expense in the amount of $ 600 and claimed utilities and telephone expense in the amount of $ 150.↩
11. Closing agreements are statutory agreements, authorized by sec. 7121. They are employed to define conclusively the tax treatment of an item or a taxpayer's liability for specific years. Nadler v. Commissioner, T.C. Memo. 1992-383. Both the taxpayer and the IRS are bound by the terms of the closing agreement. Id.↩
12. At the time the 1985 return was examined (1987), the 1986 return had already been filed. Petitioners chose not to file an amended return for 1986; thus petitioners used 1985 as the first year for the Rule of 78's method, 1987 as the second year, and 1988 as the third year.↩
13. Falk v. Commissioner, 37 T.C. 1078 (1962), affd. 332 F.2d 922 (5th Cir. 1964); Geometric Stamping Co. v. Commissioner, 26 T.C. 301 (1956); Gus Blass Co. v. Commissioner, 9 T.C. 15↩ (1947).
14. It should also be noted that all the cases cited by petitioners were decided before the filing of a Form 3115 became a requirement to implement a change in accounting method.↩
1. All figures are rounded up to the next higher integer.↩
2. The amounts provided here are approximations based upon the entire record. Although the parties have provided some computations, a Rule 155 computation will be required. Futhermore, the cash method deductions do not reflect the effect of sec. 163(h)(5).↩
15. Prabel v. Commissioner, 91 T.C. 1101 (1988), affd. 882 F.2d 820↩ (3d Cir. 1989), denied partnership interest deductions from real estate investments that were calculated using the Rule of 78's. Respondent required a change from the Rule of 78's accounting method to an economic accrual accounting method, whereas the present case would require a change to a cash method of accounting.
16. This adjustment approximates the amount of student loan interest deductions petitioners claimed on their 1985 and 1987 returns using the Rule of 78's method of accounting reduced by the amounts that would have been allowed under the cash method.↩
17. Petitioners claimed the Sallie Mae interest expense as "investment interest" on Schedule A of the 1987 and 1988 returns, but argue on brief that it is deductible under sec. 162. Thus, we need not decide whether such interest constitutes "investment interest" within the meaning of section 163(d).↩
18. A phase-out provision, applicable under sec. 163(h)(5), provides that for any taxable year beginning in calendar years 1987 through 1990, the amount of personal interest that is non-deductible under sec. 163 is limited to the applicable percentage of such amount. The applicable percentages are: 1987, 35 percent; 1988, 60 percent; 1989, 80 percent; 1990, 90 percent; 1991 and thereafter, 100 percent. See sec. 1.163-9T(c) Temporary Income Tax Regs., 52 Fed. Reg. 48409↩ (Dec. 22, 1987).
19. Respondent also determined that petitioners failed to prove that they were seeking employment in the same trade or business. However, we need not reach this matter given our disposition of the issue.↩
20. At trial, petitioners claimed an increase in the deduction for rent on business property to $ 1,022 and sought to introduce additional evidence of expenditures. We denied petitioners the right to introduce this new evidence because it was not produced earlier pursuant to the Court's order regarding the exchange of documents for trial.↩